UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARREA CHRISTOPHER,<br><br>                          Plaintiff,<br>v.<br><br>KNIGHT BROOK INSURANCE; BRIDGER INSURANCE; SANTANDER CONSUMER USA,<br><br>                         Defendants. | Case No.: 23-cv-01608-JAH-DEB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>**[ECF No. 10]** |

## INTRODUCTION

Pending before this Court is Defendant Santander Consumer USA's ("Defendant") Motion to Compel Arbitration. ECF No. 10 (the "Motion" or "Mot."). Plaintiff, Carrea Christopher ("Plaintiff" or "Christopher"), did not file an Opposition. The Motion is decided without oral argument pursuant to Civil Local Rule 7.1.d.1. Upon consideration of the Motion, IT IS HEREBY ORDERED that Defendant's Motion to Compel Arbitration is **GRANTED**.

///

///

## BACKGROUND

On August 31, 2023, Plaintiff, a pro se litigant, filed a complaint against Knight Brook Insurance, Bridger Insurance,[1] and Defendant Santander Consumer USA (an automobile financing company) alleging what the Court construes to be claims of fraud and breach of contract regarding the application of insurance payments to Defendant's outstanding balance on his vehicle after the vehicle was damaged in a collision.[2] *See* ECF No. 1 ("Complaint" or "Compl."). Plaintiff alleges that he notified Knight Brook Insurance, Bridger Insurance, and Defendant about the car collision, after which his car was declared a "total loss." Compl. at 4. According to Plaintiff, Defendant stated that "the insurance company would pay off the vehicle," but Defendant allegedly continued to send Plaintiff bills. *Id.* at 5. It is unclear from the Complaint whether Plaintiff's vehicle was actually paid off. Currently, Plaintiff seeks redress from this Court in the form of general, specific, and punitive damages from Knight Brook Insurance, Bridger Insurance, and Defendant. *Id.*

On March 26, 2024, Defendant filed a Motion to Compel Arbitration arguing that, pursuant to the Federal Arbitration Act ("FAA"), Plaintiff's allegations against Defendant are subject to mandatory arbitration. Defendant asserts that Plaintiff and Defendant entered into a Retail Installment Sale Contract ("Contract") on June 12, 2019, and two separate Extension Agreements ("Extension Agreements") on December 3, 2020 and February 5, 2021, all of which contained arbitration provisions that govern Plaintiff's claims against Defendant. Defendant also seeks to stay this case as to Plaintiff's allegations against Defendant.

///

---

[1] Though not parties involved in the instant Motion to Compel Arbitration, both Knight Brook Insurance and Bridger Insurance remain Defendants in this lawsuit. *See* ECF Nos. 16-17.

[2] The Court interprets Plaintiff's three alleged "claims" for damages as two separate causes of action: fraud and breach of contract. *See generally* Compl.

## LEGAL STANDARD

The FAA, 9 U.S.C. § 1, *et seq.*, reflects a strong public policy in favor of arbitration. The FAA applies to "a contract evidencing a transaction involving commerce," and provides that any arbitration agreement within its scope "shall be valid, irrevocable and enforceable[.]" 9 U.S.C. § 2. Under the FAA, commerce is defined as "commerce among the several States or with foreign nations." 9 U.S.C. § 1. The purpose of the FAA was to put arbitration agreements "upon the same footing as other contracts" and to allow for parties to resolve lawsuits in an expeditious and cost-effective manner. *Beard v. Santander Consumer USA, Inc.*, 2012 WL 1292576, at *3 (E.D. Cal. Apr. 16, 2012), *report and recommendation adopted*, 2012 WL 1576103 (E.D. Cal. May 3, 2012) (citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11 (1974)).

If a party fails to arbitrate under an agreement that contains an arbitration clause, the aggrieved party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding a motion to compel arbitration, the district court must determine whether (1) "there is an agreement to arbitrate between the parties;" and (2) "the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citations omitted). If the court finds that both conditions have been met, it "must compel arbitration unless the opposing party shows the dispute is not actually subject to arbitration." *Viani v. Nationwide Mut. Ins. Co.*, 2024 WL 1049955, at *1 (E.D. Cal. Feb. 5, 2024) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). "The FAA leaves no place for the exercise of discretion by a district court" and the court should compel arbitration unless the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." *Beard*, 2012 WL 1292576, at *3 (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) and *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Furthermore, Supreme Court precedent makes clear that parties may delegate to the arbitrator even the threshold issue of arbitrability. *Henry Schein, Inc. v. Archer & White*

*Sales, Inc.*, 586 U.S. 63, 68 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 69 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## DISCUSSION

Here, Defendant asserts that the FAA applies. Mot. at 11.[3] Defendant contends that under the FAA, Plaintiff is contractually required to arbitrate his claims against Defendant because the arbitration clause is valid and Plaintiff's claims fall within the scope of the arbitration provision. Mot. at 15-18. Plaintiff also argues that this Court should stay this action pending arbitration. Mot. at 18. Though Plaintiff did not file a motion opposing Defendant's Moton to Compel, by virtue of Plaintiff filing the Complaint in this matter, he has not consented to arbitration. The Court, thus, analyzes each of Defendant's arguments in turn.

**I.     MOTION TO COMPEL ARBITRATION**

**A.     Federal Arbitration Act**

The Court's determination as to whether the FAA applies requires two steps. First, the Court must determine whether there is a written provision, and second, whether the transaction involves commerce. As to the first step, there is no dispute that the Contract and the Extension Agreements, all of which included an arbitration clause, were a written document. Thus, the first requirement is met. The Court next turns to the second requirement to determine whether the transaction at issue involves commerce. The Supreme Court has interpreted 9 U.S.C. § 2 broadly extending the FAA to reach the full scope of Congress's commerce-clause power. *Allied-Bruce Terminix Companies, Inc. v.*

---

[3] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

*Dobson*, 513 U.S. 265, 268 (1995). Section 2's use of the term "evidencing a transaction" requires only that the transaction must have involved interstate commerce, not that the parties, in fact, contemplated it at the time of the agreement. *Id.* at 266.

Here, the underlying transaction is a consumer credit arrangement for the purchase of a vehicle between Plaintiff, a citizen of California, and Defendant, an Illinois corporation. Compl. ¶ 1; Mot. at 14 (citing ECF No. 10-1, Santander Consumer USA Decl. ¶¶ 3, 6). The fact that Plaintiff relied on funds from a foreign state in a transaction to buy a car in California is sufficient to implicate the FAA. *See, e.g.*, *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (applying the FAA where "[t]he financing, which originated from a foreign state, was integral to Rota–McLarty's purchase of the used car from Easterns"); *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 875 (11th Cir. 2005) (affirming district court's application of FAA in payday lending transaction between a Georgia resident and bank located in South Dakota); *Betancourt v. Experian Info. Sols., Inc.*, 2015 WL 12806461, at *2 (C.D. Cal. May 29, 2015) (applying the FAA "because the Contract involved interstate parties and financing from out-of-state sources, and, thus 'involved' interstate commerce"); *Hamby v. Power Toyota Irvine*, 2012 WL 13036860, at *6 (S.D. Cal. Mar. 22, 2012) (reasoning that the FAA applied because automobile lending impacts the national economy) (citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003)). As stated by the Supreme Court in *Citizens Bank*, "[n]o elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause." 539 U.S. at 58. Accordingly, the Court finds that the FAA applies in this case.

B.     **Validity of the Arbitration Agreement**

Defendant argues that the arbitration clause between Plaintiff and Defendant is valid and in accordance with the terms of the Contract and the Extension Agreements. Mot. at 15. However, Defendant also argues that the Court need not address the validity of the

arbitration agreement given that the parties contractually delegated this role to the arbitrator. *Id.* at 15.

Parties may delegate the threshold question of "arbitrability" to the arbitrator if the parties agree to do so by "clear and unmistakable" evidence. *Schein*, 586 U.S. at 69. However, before referring a dispute to an arbitrator, the court must first determine if the arbitration agreement is valid. *Id.* If a valid arbitration agreement exists, "and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

The federal policy in favor of arbitration does not govern the validity of an arbitration clause. Rather, arbitration clauses are a matter of contract law and courts must therefore apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc.*, 514 U.S. at 939 ("The relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration."); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). In California, the party moving to compel arbitration has the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while the party opposing arbitration has the burden of proving by a preponderance of the evidence any fact necessary to its defense. *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (2009), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *see also Trevino v. Acosta, Inc.*, 2018 WL 3537885, at *3 (N.D. Cal. July 23, 2018) (citing *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014)). Because the Contract is governed by both Federal and California state law (*see* ECF No. 10-1, Ex. A), the Court looks to the California state law to determine whether there is a valid arbitration agreement between the parties. Under California law, a written agreement to submit a dispute to arbitration is valid and enforceable, notwithstanding a reason under state law that would render any contract invalid. Cal. Code Civ. Proc. § 1281.

Here, the Court finds that a valid agreement to arbitrate exists. Defendant attaches the Contract, which includes an arbitration provision, signed with Plaintiff's initials "CC," and the Extension Agreements, both of which include arbitration provisions, bear Plaintiff's electronic signature[4] "Carrea Christopher." ECF No. 10-4, Exs. A-C. Because Plaintiff never filed an Opposition, he does not dispute that he signed the agreements. As a result, the Court finds no reason that would render the contracts invalid and finds that Defendant has met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *See Owens v. Intertec Design, Inc.*, 38 Cal. App. 4th 72, 75 (Cal. Ct. App. 1995) (finding that "the arbitration agreement must be enforced as a matter of law" where the plaintiff "presented no evidence, by declaration or otherwise, in support of the 'facts' underlying his arguments in opposition to the [motion to compel arbitration]").

Given that the Court finds a valid agreement, the Court next looks to whether the arbitration agreement delegates the question of arbitrability to an arbitrator. The arbitration provision in the Contract provides that "[a]ny claim or dispute . . . including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action." ECF No. 10-1, Ex. A. Accordingly, because the Court finds that the express language of the arbitration provision in the Contract delegates any arbitrability issue to an arbitrator, the Court therefore "has no power to decide the arbitrability issue." *Schein*, 586 U.S. at 68.

### C. Scope of the Arbitration Agreement

Defendant argues that Plaintiff's claims against Defendant fall within the scope of the arbitration provisions and therefore this Court must compel arbitration. As a threshold matter, the Court finds that determining whether Plaintiff's claims fall within the scope of

---

[4] In California, "an electronic signature" has the same legal effect as a handwritten signature. Cal. Civ. Code § 1633.7(d).

the arbitration provision is a matter to be determined by the arbitrator, not the Court.  As previously stated, the arbitration clause in the Contract explains that "[a]ny claim or dispute . . . **including the interpretation and scope of this Arbitration Provision** . . . shall . . . be resolved by neutral, binding arbitration and not by a court action." ECF No. 10-1, Ex. A (emphasis added).  The Ninth Circuit, has found that similar language "clearly and unmistakably empowers the arbitrator to decide questions of scope in the first instance." *Aceves v. Autonation, Inc.*, 317 F. App'x 665, 666 (9th Cir. 2009) (contract stating "any claims . . . including the validity, enforceability or scope of this Arbitration Provision . . . are subject to arbitration" assigns the question of scope to the arbitrator); *see also Rodriguez v. Am. Techs., Inc.*, 136 Cal.App.4th 1110, 1123 (2006) (contract stating "arbitrator shall have the power to rule on . . . scope or validity of the arbitration agreement" assigned questions of scope to the arbitrator).

## II.   ENTRY OF STAY

Finally, Defendant requests that the Court stay this matter pending the completion of arbitration.  Mot. at 18.  The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  Defendant has made such a request, and the Court having found a valid and enforceable arbitration agreement, **HEREBY ORDERS** this action **STAYED** pending the completion of arbitration.

///
///
///
///
///

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Compel Arbitration is **GRANTED**; and

2. Defendant's Request for a Stay of Action pursuant to 9 U.S.C. § 3 is **GRANTED.**

**IT IS SO ORDERED.**

DATED: August 29, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

9

23-cv-01608-JAH-DEB